USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/24/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
BUGSBY PROPERTY LLC,                      :
                                   Plaintiff,   :        19-CV-9290 (VEC)
                                              :
                   -against-                     :        OPINION AND ORDER
                                              :
ALEXANDRIA REAL ESTATE EQUITIES,          :
INC. and JOEL S. MARCUS,                  :
                                   Defendants.  :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       This action stems from compensation allegedly owed to Plaintiff Bugsby Property LLC ("Bugsby") for financial advice and services rendered to Defendants Alexandria Real Estate Equities, Inc. ("ARE") and its CEO and Executive Chairman, Joel Marcus. This is one of several lawsuits among the same parties, asserting similar claims. Plaintiff filed a lawsuit in New York state court in February 2019, asserting virtually identical claims; that case was dismissed. *See Bugsby Property LLC v. Alexandria Real Estate Equities, Inc.*, No. 650795/2019, 2019 WL 3550700 (N.Y. Sup. Ct. Aug. 5, 2019). A parallel action is also currently pending in California Superior Court in Los Angeles. *See id.* at 6; Mastro Declaration, Dkt. 22 Ex. 3 at 1 ("Mastro Decl."). Defendants move to dismiss Plaintiff's complaint, *inter alia*, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Because the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1359, Defendants' motion to dismiss is GRANTED.

1

## BACKGROUND[1]

Plaintiff Bugsby Property LLC is, allegedly, a single-member limited liability company organized under Delaware law. Compl. ¶ 5. Bugsby was founded in 2012 by Steven Marcus ("Steven"), the son of Defendant Joel Marcus ("Joel").[2] *Id.* at ¶¶ 3, 5; Mastro Decl. Ex. 12 at 15. Bugsby, through Steven, provides advisory services regarding investment management and real estate transactions. Compl. ¶ 2; Mastro Decl. Ex. 13 ¶ 6. At its founding, Steven was Bugsby's sole Member and Manager. Mastro Decl. Ex. 12 at 15. In April 2013, Steven's significant other Sarah-Louise Ballot-Lena ("Ballot-Lena") became the second member of the LLC, owning a 3% interest in the company. *Id.*; *See* Ballot-Lena Declaration, Dkt. 25-1 at 3 ("Ballot-Lena Decl.").

In November 2013, Joel Marcus asked Steven for advice on how to improve the underperformance of ARE stock. Compl. ¶¶ 30, 35. In response, Bugsby "created, recommended, and provided to Defendants a complete and fundamental solution to ARE's financial and capital markets approach (the 'Bugsby Blueprint')." Compl. ¶¶ 1, 39–40. The Bugsby Blueprint included a joint venture strategy that ARE adopted and rebranded as "Project Affirmed." Compl. ¶¶ 59, 66. Project Affirmed "c[a]me to life" through a series of meetings held in December 2013 among Steven, Joel, and various New York-based investment bank teams. *See* Compl. ¶¶ 66–69. On December 27, 2013, Steven entered into a non-disclosure agreement with ARE acknowledging that he would receive "no compensation" for the "strategic advice to be provided to [ARE] with respect to… 'Project Affirmed.'" Mastro Decl. Ex. 13-F ("CNDA") at Preamble, ¶ 20. Steven signed the CNDA in his individual capacity; Bugsby was

---

[1]   For the purposes of this motion to dismiss, the Court "must take all facts alleged in the complaint as true." *National Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).

[2]   As this dispute involves family members with the same last name, the Court uses first names for ease of reference.

not a party to the agreement.  *See* CNDA at 5.  The joint venture strategy detailed in the Bugsby Blueprint was successful; ARE's market value has grown by over $13 billion since 2013.  Compl. ¶¶ 90, 98.

On June 16, 2017, Steven gifted his 97% ownership interest in Bugsby to Ballot-Lena, thereby making her Bugsby's sole member.  Mastro Decl. Ex. 12 at 15; Ballot-Lena Decl. at 7.  Despite the transfer of membership interest, Steven continues to serve as Bugsby's sole manager; he retains "full authority, power and discretion to manage and control [Bugsby's] business, property and affairs," and is the only person who has ever provided services on Bugsby's behalf.  Mastro Decl. Ex. 12 at 15–16; Compl. ¶ 35; Ballot-Lena Decl. at 6.

This Court is neither the first nor only forum to consider Bugsby's claims.  On February 7, 2019, Bugsby and Steven Marcus sued ARE and Joel Marcus in New York Supreme Court; the complaint alleged *quantum meruit* and fraud claims and sought $12 million for the market value of services allegedly provided.  *See* Mastro Decl. at 6; Mastro Decl. Ex. 1 ¶¶ 65–90 ("State Compl."); Mooney Declaration, Dkt. 25-3 Ex. A ("Mooney Decl.").  On February 13, 2019, Joel Marcus and ARE filed a complaint in California Superior Court, seeking a declaration that Steven Marcus and Bugsby were owed no compensation under the terms of the CNDA.[3]  Mastro Decl. Ex. 5; Mooney Decl. Ex. C.  The New York state action was dismissed for *forum non conveniens*; the judge reasoned that the case lacked a substantial nexus with New York and that California was an adequate forum in which to resolve the claims.  *See Bugsby Property LLC*, 2019 WL 3550700, at *6.  The California action is ongoing.[4]

---

[3] The parties agreed in the CNDA that personal jurisdiction and venue were proper in Los Angeles.  CNDA ¶12.

[4] On February 28, 2020, the California Superior Court granted Bugsby's motion to quash service of summons for lack of personal jurisdiction.  *See* Dkt. 29 at 11.  Steven Marcus, however, remains a defendant in the California case, which concerns the same facts that are at issue in this lawsuit.

On October 8, 2019, five days after the New York state action was dismissed, Bugsby filed its complaint in this Court. *See* Compl. Although the federal court complaint is virtually identical to the state court complaint, there are certain key differences in the factual representations made in the different cases that are relevant to the pending motion. First, although Steven Marcus was a plaintiff in state court, only Bugsby is a plaintiff in the instant case. Moreover, while Steven described Bugsby as a multi-member LLC in a sworn affidavit filed in both the New York state action and the California action, the federal court complaint describes Bugsby as a single-member LLC, with Ballot-Lena as the sole member. Bugsby now seeks over $100 million in compensation for the value of the Bugsby Blueprint. Compl. ¶¶ 103, 108.

Defendants move to dismiss the complaint, *inter alia*, for lack of subject matter jurisdiction.[5] Defs.' Mem. of Law, Dkt. 21 at 1.

## DISCUSSION

"Determining the existence of subject matter jurisdiction is a threshold inquiry"; a court may properly dismiss a claim for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010). The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that the court has jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), courts "must take all uncontroverted

---

[5] Defendants also argue that the Court lacks personal jurisdiction; that the Complaint fails to state a claim, fails to join a necessary and indispensable party, and is barred by collateral estoppel; and that the case should be dismissed on *forum non conveniens* grounds. Because the Court has determined that it lacks subject matter jurisdiction, it need not address Defendants' other arguments.

facts in the complaint [] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where "jurisdictional facts are placed in dispute," however, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)); *Morrison*, 547 F.3d at 170 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)," the Court "may consider evidence outside the pleadings").

### I.   Legal Framework

A federal court may exercise diversity jurisdiction over a civil action between citizens of different states, where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). For the purpose of determining diversity of citizenship under Section 1332, an LLC "takes the citizenship of each of its members." *Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

A federal court may not exercise diversity jurisdiction over "civil actions in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. The Second Circuit "give[s] careful scrutiny to assignments which might operate to manufacture diversity jurisdiction," as "such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction far beyond its purpose." *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) (internal quotation marks and citation omitted). Accordingly, Section 1359 is "construe[d] … broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction." *Id.* (citing *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1034 (2d Cir. 1969); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976)).

An assignment of interest among closely related entities or individuals triggers a presumption of collusion. *Prudential Oil Corp.*, 546 F.2d at 476 (holding that the assignment of a claim from a non-diverse parent corporation to its diverse subsidiary "must be treated as presumptively improper and as having been undertaken for the purpose of attempting to manufacture diversity jurisdiction"). The Second Circuit has extended the "presumption of collusion to assignments involving corporate directors and shareholders," due to their "close ties" and "sufficient identity of corporate interests." *Airlines Reporting Corp.*, 58 F.3d at 862-63 (emphasizing the importance of using a "cautious eye" to ensure that such assignments "do not inappropriately channel ordinary tort and contract litigation, essentially disputes of a local nature, into the federal courts").[6] Reorganization of the membership structure of an LLC similarly triggers a presumption of collusion under section 1359. *See Castillo Grand LLC v. Sheraton Operating Corp.*, No. 09-CV-7197, 2009 WL 4667104, at *2–7 (S.D.N.Y. Dec. 9, 2009) (holding that § 1359 barred jurisdiction where an LLC "attempted to eliminate the indirect ownership interests" of non-diverse members in an effort to preserve diversity jurisdiction).

A party "may rebut or meet the presumption of collusion by offering evidence that the transfer or assignment of interest was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction." *Prudential Oil Corp.*, 546 F.2d at 476. Merely offering a perfunctory business reason, however, will not suffice; "[i]nstead, the burden falls on the party asserting diversity to demonstrate that the reason given for the assignment is legitimate, not

---

[6] *See also Alix v. McKinsey & Co., Inc.*, 404 F. Supp. 3d 827, 841 (S.D.N.Y. Aug. 19, 2019) ("Among the closely related pairs that draw such suspicion under Section 1359 are corporate entities and their directors, officers, and significant shareholders."); *Falow v. Cucci*, No. 00-CV-4754, 2003 WL 22999458, at *6 (S.D.N.Y. Dec. 19, 2003) (explaining that an assignment of claims between a corporation and one of only two existing shareholders and officers is treated as "presumptively collusive and as having been effectuated for the purpose of attempting to manufacture diversity jurisdiction"); *Kahn v. C & L Lisa, Co., Inc.*, No. 85-CV-4654, 1986 WL 4068 (S.D.N.Y. Mar. 31, 1986) (presumption of collusion where the assignment of the claim was from a non-diverse corporation to a diverse individual who is the sole owner and officer of that corporation).

pretextual." *Airlines Reporting Corp.*, 58 F.3d at 863.  Courts may consider several factors in evaluating whether the proffered reason is truly "unconnected with [the] acquisition of diversity jurisdiction," including *inter alia*, (1) whether the assignor actually controls the conduct of the litigation; (2) the assignee's lack of a previous connection with the assigned claim or interest; (3) the lack of consideration given for the transfer; (4) the timing of the assignment; and (5) the underlying purpose of the transfer.  *Id.*

## II.    The Reorganization of Bugsby's Membership Triggers a Presumption of Collusion

At the outset, the Court notes that diversity of citizenship exists on the face of Plaintiff's complaint; Bugsby's sole member, Ballot-Lena, is a citizen of France, and Defendants are citizens of California.  Compl. ¶¶ 7, 8, 21.  Defendants do not challenge that diversity exists between Ballot-Lena and Defendants, but rather that such diversity was "manufactured" in violation of § 1359.  Defs.' Mem. of Law at 11–14.  As a United States citizen domiciled abroad, Steven Marcus is a "stateless" citizen whose continued membership in Bugsby would have rendered Bugsby a non-diverse party for the purposes of establishing subject matter jurisdiction.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (a United States citizen domiciled abroad is "'stateless' for purposes of § 1332(a)(3)"); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990) ("[A] suit by or against United States citizens domiciled abroad may not be premised on diversity.").  Defendants argue that in order to avoid that result, Steven gifted his 97% membership interest in Bugsby to Ballot-Lena, thereby ensuring that Bugsby would not have a "jurisdictional spoiler," *Newman-Green*, 490 U.S. at 830; Defs.' Mem. of Law at 13.

The Court agrees that Steven's reorganization of Bugsby's membership structure through the elimination of himself as a "non-diverse member[]" and the transfer of his ownership interest to Ballot-Lena triggers a presumption of collusion. *See Prudential Oil Corp.*, 546 F.2d at 475 (noting that "[t]he scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated [entities]."); *Castillo*, 2009 WL 4667104, at *4 (holding that the "reorganization of the ownership structure of an LLC with the intent of changing the LLC's citizenship for diversity purposes" violated § 1359 and emphasizing that the Second Circuit's interpretation of § 1359 bars "*any agreement* whose primary aim is to concoct federal diversity jurisdiction") (emphasis in original and internal citation omitted).

### III.    Bugsby Has Failed to Rebut the Presumption of Collusion

Bugsby has failed to rebut the presumption of collusion; its claim that the transfer of Steven's membership interest was for "business and operational reasons," Pl. Opp., Dkt. 26 at 13, is conclusory, unsupported, and insufficient to meet or overcome the presumption. *See Airlines Reporting Corp.*, 58 F.3d at 863 ("simply offering evidence of a business reason will be insufficient to rebut the presumption"); *Falow*, 2003 WL 22999458, at *7. Moreover, an analysis of Steven's own statements regarding Bugsby's membership structure, his continued unilateral control over the company's operations, Ballot-Lena's lack of participation in the business, and the absence of consideration paid for the transfer of Steven's membership interest suggest that the transfer was done to manufacture diversity jurisdiction.

Steven Marcus's own statements provide the most glaring evidence that the transfer of membership interest was done for the purposes of creating diversity jurisdiction. Despite purportedly transferring his interest to Ballot-Lena in 2017, as late as 2019, Steven represented,

including in sworn statements, in both the New York and California state actions that he retained his membership in the company and that Bugsby was a multi-member LLC.  For example, the New York state complaint, filed in February 2019, describes Steven as the "principal and managing member" of Bugsby, and describes Bugsby as "a multi-member [LLC]."  State Compl. ¶¶ 11, 12.  Similarly, in an affidavit filed in the New York state action in June 2019, Steven referred to himself as the "Managing Member" of Bugsby.  Mastro Decl. Ex. 6 ¶¶ 1, 3.  Steven made similar statements in the California action, attesting that he was the managing member of Bugsby in verified discovery responses and in a sworn affidavit.  Mastro Decl. Ex. 13 ¶¶ 1, 6; Ex. 12 at 9–10.  Plaintiff's argument that these admissions were merely "wording error[s]" is entirely unpersuasive.  Pl. Opp. at 12.  Steven's repeated reference to himself as a member of Bugsby suggests that, "in reality," despite any alleged transfer of membership interest, Steven has remained a member of the LLC.  *Airlines Reporting Corp.*, 58 F.3d at 860.  In other words, the reorganization of the membership structure appears to have been a "sham transaction[]" done simply to manufacture diversity jurisdiction.  *Castillo Grand*, 2009 WL 4667104, at *2.

Steven's ongoing "financial and strategic" control over Bugsby's business operations and the course of this litigation is also strong evidence that the primary purpose of the transfer was to obtain diversity jurisdiction.  *Airlines Reporting Corp.*, 58 F.3d at 863 (explaining that courts may consider whether the assignor controls the conduct of the litigation in evaluating a justification for a transfer)*; see also Yokeno v. Mafnas*, 973 F.2d 803, 811 (9th Cir. 1992) (presumption of collusion was not overcome where the assignor had not "expressly disavowed any continuing interest in the litigation or its proceeds") (internal quotation marks and citation omitted); *Shamis v. Ambassador Factors Corp.*, No. 95-CV-9818, 1997 WL 473577 at *10 (S.D.N.Y. 1997).  Bugsby's Limited Liability Company Agreement grants Steven, "acting alone

9

… full authority, power, and discretion to manage and control [Bugsby's] business, property, and affairs," as well as full discretion over "all decisions regarding those matters."  Ballot-Lena Decl. at 6.  Steven's continued control over Bugsby's operations and this litigation undermines the likelihood that the membership interest was transferred for any legitimate business purpose. [7] *See Prudential Oil Corp.*, 546 F.2d at 476 (finding a presumption of collusion appropriate where a transferor "realistically retains a substantial pecuniary interest in the outcome of the litigation") (internal quotation and citation omitted).

Moreover, Ballot-Lena's "lack of a previous connection" to Bugsby's business operations or this litigation further suggests that the transfer was not done for a business purpose.  *See Airlines Reporting Corp.*, 58 F.3d at 863; *Shamis*, 1997 WL 473577 at *9.  The record does not indicate, and Plaintiff does not argue, that Ballot-Lena has ever had any connection to the conduct giving rise to this lawsuit, including the creation of the Bugsby Blueprint.  Prior to the purported transfer of interest in 2017, Ballot-Lena held only 3% of the membership interest in Bugsby, and even after the transfer of Marcus's 97% interest, by Plaintiff's own admission, Bugsby continued to be "led by Steven Marcus."  Compl. ¶ 39.  Plaintiff admits that Ballot-Lena does not work on its behalf; according to Bugsby, the only person who has *ever* provided services for the company is Steven Marcus.  Mastro Decl. Ex. 12 at 15–16; Compl. ¶¶ 39, 45, 49, 54–55, 66.

The transfer of Marcus's membership interest is also suspect because it appears it lacked consideration.  *See Airlines Reporting Corp.*, 58 F.3d at 863 (explaining that courts may consider the lack of any consideration in evaluating the legitimacy of the proffered reason for

---

[7] As an example of Steven's control over this litigation, Defendants note that on October 22, 2019, Steven Marcus sent an email from his Bugsby email account to Defendants' counsel.  The attachment to the email "contained a letter from Bugsby to Defendants' counsel concerning this litigation."  Mastro Decl. ¶ 15.

assignment). Steven gave Ballot-Lena the remaining 97% ownership interest in Bugsby as a gift. Ballot-Lena Decl. at 7. Such a significant transfer of interest without any meaningful consideration undermines Plaintiff's contention that the transfer was done for unspecified "business and operational purposes."

Finally, the Court considers the timing of the transfer. An assignment or transfer of interest "on or near the day a complaint is filed serves as an indication that the assignment was entered into for the purpose of manufacturing jurisdiction." *Shamis*, 1997 WL 473577 at *11. Plaintiff argues that because the transfer of membership interest occurred in 2017, two years before this lawsuit was filed, it cannot be viewed as an attempt to manufacture diversity jurisdiction. *See* Pl. Opp. at 13, n.6. The Court disagrees. The timing of an assignment or transfer, by itself, is not a dispositive factor, particularly when surrounding circumstances undermine the significance of that timing. *See Airlines Reporting Corp.*, 58 F.3d at 863. As noted, *supra,* throughout 2019, and as late as June 2019, Steven swore multiple times that he retained his membership interest in Bugsby. *See* State Compl. ¶¶ 11, 12; Mastro Decl. Ex. 6 ¶¶ 1, 3. Thus, the Court gives little weight to the fact that the transfer of membership "on its face" occurred in 2017; Steven's own statements confirm that he has acted as a member of Bugsby through at least June 2019.[8]

---

[8] Defendants suggest that Steven's transfer of his membership interest may, in fact, have occurred at "some point between June and October 2019" rather than in 2017. *See* Defs.' Mem. of Law at 13. Defendants rely on the juxtaposition of Steven's sworn affidavit in June 2019, in which he refers to Bugsby as a multi-member LLC and himself as the "managing member," and the instant complaint, in which Bugsby is recast as a single-member LLC. *Id.* Defendants also point out that "despite numerous requests in the California Action for any documents evidencing Bugsby's membership, Bugsby has refused to produce any." *Id*. at 14 n.8. Although the Court agrees with Defendants that a transfer of interest between June and October 2019, only months before this complaint was filed, would bolster their argument that the transfer was done to manufacture jurisdiction, Defendants have not provided any evidence that the transfer, at least on paper, did not occur in 2017. The Court notes, however, that the "undisputed legality" of an assignment of interest does not "necessarily render[] it valid for purposes of federal jurisdiction," due to "the ease with which a party [could] 'manufacture' federal jurisdiction by an assignment which meets the requirements of state law." *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 1490–91 (1969).

In sum, the Court finds that Plaintiff has failed to offer any persuasive evidence that rebuts the presumption of collusion triggered by the reorganization of its membership structure. Moreover, Steven Marcus's own statements regarding his membership in Bugsby, his continued sole control over the company's operations and this litigation, Ballot-Lena's lack of involvement in the business, the conduct giving rise to this lawsuit, or the conduct of the litigation, and the absence of any meaningful consideration given for the transfer are all consistent with the presumption that Marcus' transfer of interest was done merely to "create a back-door entry to federal court." *Castillo*, 2009 WL 4667104 at *8–9.  Because such a "sham transaction" is precisely the sort of improper manipulation prohibited by Section 1359, Defendants' motion to dismiss is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The complaint is DISMISSED without prejudice.  The Clerk of Court is respectfully directed to close the open motion at Dkt. 20 and terminate this case.

**SO ORDERED.**

Date:  April 24, 2020
      New York, New York

                                        **VALERIE CAPRONI**
                                        **United States District Judge**